Argued March 2, reversed and decree entered June 27, rehearing denied September 19, 1922.

# .WALTERS *v.* WAGGENER ET AL.

### (208 Pac. 753.)

**Wills—Statute as to Widow's Election Between Fee and Dower Construed so as not to Repeal Statute as to Election Between Dower and Provision of Will.**

1. Section 10071, Or. L., enacted in 1854, providing that when a widow is entitled to election under Sections 10069 and 10070, she shall be deemed to have elected to take under jointure or will, unless within one year after her husband's death she shall have commenced proceeding to recover dower, and Section 10053, giving a widow entitled to dower one half of all her husband's lands, or at her election in lieu thereof an undivided third in fee of all the husband's lands, and providing that when a widow shall be entitled to an election she shall be deemed to have elected to take the one third, unless within one year she shall commence proceeding to recover her dower, being remedial, are construed liberally, and Section 10053 did not repeal the original statutes as to election between dower and testamentary provisions.

**Dower—Dower and Fee Created by Operation of Law in Husband's Lands Distinguished.**

2. Dower is only an estate for life, even after admeasurement, while the fee created under Section 10053, Or. L., entitling a widow to take in lieu of dower an undivided third part in fee of lands whereof the husband was seised of an estate of inheritance creates in the widow an estate of inheritance.

**Wills—Statute Changing Rule of Common Law as to Widow's Rights in Dower Strictly Construed.**

3. Section 10070, Or. L., to the effect that the widow should not be entitled to both a testamentary provision and her dower unless it plainly appeared by the will to have been so intended by the testator, being in derogation of the common law, must be strictly construed.

**Descent and Distribution—Fee Estate of Widow in Husband's Lands Defeated by Election to Take Dower.**

4. The widow's fee estate created by Section 10053, Or. L., creating in the widow in lieu of dower an undivided third part in fee of lands whereof the husband was seised of an estate of inheritance during marriage, was not defeated by the failure of the widow to elect to take dower.

**Wills—Failure of Widow to Elect to Take Under Will Held not to Defeat Fee-simple Estate in Husband's Land Created by Operation of Law.**

5. Where a husband died April 7, 1918, and by will left all his property to a trustee for the benefit of his widow, and on May 14, 1919, the widow died without making election, the fee-simple estate

of the widow in lands of the husband were not defeated by her failure to make such election, and her estate in one third of the husband's lands was in fee simple and one of inheritance.

From Lane: G. F. SKIPWORTH, Judge.

Department 1.

REVERSED AND DECREE ENTERED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Albert H. Tanner* and *Mr. J. J. Johnson,* with an oral argument by *Mr. Tanner.*

For respondent there was a brief over the name of *Messrs. Smith & Bryson,* with an oral argument by *Mr. E. R. Bryson.*

BURNETT, C. J.—The plaintiff, Fred C. Walters, is the son of James W. Walters by the first wife of the latter. After the death of the plaintiff's mother, his father married the widowed mother of some of the defendants. With her he lived until his death on April 7, 1918. At the time of his death he was the owner in fee simple of certain real estate described in the complaint. He died leaving a will of which the second clause reads in part as follows:

"Second. Should my wife, Rachel Walters, die before my decease, all of the estate of which I may die seized or possessed of whatsoever character, real, personal or mixed, I give, bequeath, grant and devise unto my son, Fred C. Walters, his heirs and assigns forever. But should my wife, Rachel Walters, survive me, in such event all of the estate of which I may die seized or possessed, real, personal or mixed, I give, bequeath, grant and devise unto the First Investment & Loan Company of Eugene, Oregon, a corporation of Oregon, in trust to have and to hold the same to and for the following uses and pur-

poses and upon the following trusts, viz.: To hold, manage, control, invest, re-invest and loan the same and to collect the rents, interest, profits and income thereof and therefrom; to pay out of said trust estate all proper charges and expenses of said trust including insurance against loss or damage by fire, taxes or other like assessments and including also any inheritance tax upon any devise or bequest herein contained and the proper costs and expenses of all necessary repairs to any of said property and after the payment of the proper charges and expenses against said trust estate, to pay over the balance of the income therefrom from time to time as required by her to my wife, Rachel Walters, so long as she shall live; and providing further that should my said wife in the judgment of the said trustee on account of sickness, accident or for any reason whatsoever, including the insufficiency of the net income from said trust estate to meet her ordinary wants, require for her comfortable maintenance and well-being at any time or from time to time sums of money in excess of the net income from said trust estate, then I authorize, empower and direct said trustee to either pay over to my said wife, or, in *their* discretion, apply for her use and benefit such further sums of money out of the principal of said trust estate as they, in their absolute and uncontrollable discretion, may deem reasonably necessary; upon the death of my said wife, Rachel Walters, said trust shall terminate and said trustee shall pay, transfer, set over and convey all of said trust estate remaining in its hands to my son, Fred C. Walters, his heirs and assigns forever.

"Said trustee shall have full power and authority at any time, and from time to time when funds may be needed for any of the purposes of said estate, to borrow money upon the security of said trust estate at such rates of interest and upon such terms as it may be advised, and to mortgage, pledge, hypothecate any of said trust estate for such purpose.

Said trustee shall also have full power and authority to sell any of the real property of said trust estate either for cash or upon credit and to execute all necessary and proper conveyances thereof, provided that such sale shall be with the assent and concurrence of my son, Fred C. Walters, if he be alive at the time thereof. Said trustee shall invest any funds in their hands belonging to said trust estate only in first mortgages upon real property or in municipal, state or government bonds.

"During the administration of my estate, it is my will that the probate court having jurisdiction thereof make my wife, Rachel Walters, a liberal allowance for her support and maintenance."

The mother of the defendants, the second wife of the plaintiff's deceased father, died on May 14, 1919, without ever having commenced any proceeding or taken any measure to recover her dower in the land of her deceased husband or have the same assigned to her. The estate of James W. Walters was regularly administered and closed, and the trustee conveyed the property described in the complaint herein to the plaintiff. The latter now sues the children of his stepmother and their spouses, to quiet title to this land. Their claim is that because the widow did not institute proceedings to recover her dower, there was cast upon her an estate of an undivided one third in fee simple in the lands of her husband of which he died seised, and that she was entitled to a provision made for her in his will. This, of course, is challenged by the plaintiff.

1. Sections 10,069, 10,070 and 10,071, Or. L., which have come down to us unchanged from the legislation of 1854, read thus:

"§ 10,069. If any such jointure or pecuniary provision be made before marriage, and without the assent of the intended wife, or if it be made after

marriage, she shall make her election after the death of her husband whether she will take such jointure or pecuniary provision or be endowed with the lands of her husband, but she shall not be entitled to both.

"§ 10,070. If any lands be devised to a woman, or other provision be made for her in the will of her husband, she shall make her election whether she will take the lands so devised or the provisions so made, or whether she will be endowed by the lands of her husband; but she shall not be entitled to both unless it plainly appears by the will to have been so intended by the testator.

"§ 10,071. When a widow shall be entitled to an election under either of the last two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

As it stood at the time of the occurrences mentioned in the pleadings, Section 10,053, Or. L., being Section 1 of Chapter 331, Laws of 1917, read as follows:

"The widow of every deceased person shall be entitled to dower, or the use, during her natural life, of one-half part of all the land whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof; *provided, however,* that any woman entitled to dower, may, at her election, take in lieu of such dower the undivided third part in her individual right in fee of the whole of the land whereof the husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof. *And provided further,* that when a widow shall be entitled to an election under this section, she shall be deemed to have elected to take the undivided third of such lands unless within one year after the death of her husband she shall commence

proceedings for the assignment or recovery of her dower.''

It will be noted that there is an element common to Section 10,071, Or. L., and Section 1 of Chapter 331, Laws of 1917, giving a certain involuntary effect in each as an election upon the part of the widow, "unless within one year after the death of her husband she shall commence proceedings for the assignment or the recovery of her dower." The quoted language is identical in both sections. As applied to the choice between a provision for her in the will and the claim of dower, the omission to commence proceedings for the assignment or recovery of dower results in an election by operation of law to take the testamentary provision. As between an estate in dower and an estate in fee simple of an undivided one third of her husband's land, the same omission to commence proceedings for dower casts upon her the additional benefit of the fee-simple estate mentioned. The proceedings for the recovery of dower are as old as any of the statutes in this state. The legislature had authority to enact that the widow should have in the first place the benefit of testamentary provisions in her favor, if she omitted to sue for dower. It had an equal right, without in the least disturbing this first beneficial provision for her, to give her the additional benefit of a fee-simple estate in her husband's realty, if she omitted action for dower. As these statutes are remedial in their nature and the law always has a tender regard for the rights of a widow, they must be construed liberally. We cannot say that the later enactment of 1917 repealed the original statutes about election between dower and testamentary provisions. If possible, we must construe both of those

statutes to stand. For instance, we read in *Messick* v. *Duby,* 86 Or. 366, 372 (168 Pac. 628), in an opinion by Mr. Justice BEAN:

"Where a new remedy or mode of procedure is authorized, without an express repeal of a former one relating to the same matter, and the new remedy is not inconsistent with the former one, the later act will be regarded as creating a concurrent remedy, and not as abrogating the former mode of procedure": Citing many authorities.

Again, in *Swensen* v. *Southern Pacific Co.,* 89 Or. 275, 279 (174 Pac. 158), we read from the opinion of Mr. Justice HARRIS:

"A repeal by implication may be effected when a later conflicts with a prior statute or when one is intended as a substitute for another act. It is so easy for the legislature, when adopting one statute, to say that another statute on the same subject is repealed, and an intention to repeal, when it exists, is so likely to be expressly stated, that the courts will not presume that the later repeals the prior statute unless the two are so obviously in conflict that both cannot be executed. A repeal by implication is effected if there be such positive repugnancy between the new and the old enactments that they cannot stand together or be harmonized; but the courts will, however, if possible, construe the two statutes together and adopt any reasonable construction which will sustain both of them."

It is true that Section 10,070, Or. L., declares that if provision be made for a widow in the will of her husband, she shall make her election whether she will take the provision made, or whether she will be endowed with the lands of her husband, but she shall not be entitled to both, unless it plainly appears by the will to have been so intended by the testator. This section, however, applies only to

dower and not to anything else. As said in *Carper v. Crowl*, 149 Ill. 465, 474 (36 N. E. 1040), speaking of a widow's rights under a statute almost like our own:

"It is manifest that the effect of her failure to elect under the statute bars only her dower and distributive share of her husband's estate, as widow, and nothing more. There being no attempt here to assert dower, or a right to a distributive share of the personalty, the statute can have no application."

So, in this case where there has been no application for dower, none exists to complicate the situation or call for the application of the statute requiring an election between dower and testamentary provisions. There can be no choice or election between two things one of which does not exist.

It cannot be that the estate in fee simple of an undivided one third of the husband's land is identical with dower; yet that is the necessary consequence of holding that the fee-simple estate perishes, if the widow takes under the will only by failing to sue for dower. There are many points of difference between the two estates and we must presume that the legislative assembly spoke advisedly in the use of the legal terms employed in the enactment "The dower interest of a widow while unassigned is a mere right of action": *Neal* v. *Davis*, 53 Or. 423, 433 (99 Pac. 69). "As there was no assignment of dower to the appellant, she had no esate whatever in the land of which her husband died seized, and was not entitled to the possession of any part of it": *Leonard* v. *Grant*, 8 Or. 276, 278. "The rule is well settled that, unless otherwise regulated by statute, a mere right of dower before an assignment thereof

104 Or.—44

to the dowress is only a chose in action, and not such an interest or estate in real property as can be levied upon and sold under an execution against her property": *Baer* v. *Ballingall,* 37 Or. 416, 421 (61 Pac. 852). There is no dower in an equity: *Farnum* v. *Loomis,* 2 Or. 29; *Whiteacre* v. *Vanschoiack,* 5 Or. 113. On the other hand, there may be a fee in an equity: *Chance* v. *Weston,* 96 Or. 390, 399 (190 Pac. 155).

2. Dower is only an estate for life, even after admeasurement, while the fee is an estate of inheritance. Until the widow begins proceedings to recover the dower, she has only a chose in action, which she may abandon without commencing proceedings. The death of her husband by operation of law casts upon the widow in due time a fee-simple estate, which is the highest estate one can have in lands, liable of course to be defeated by her choosing subsequently to institute proceedings within one year to recover dower. Her omission to institute such proceedings operates as an ademption of her dower. It can no longer be considered as one of the alternatives between which she must elect as against the testamentary provision in the will of her husband. He must be presumed to have known the law, that if she chose to remain silent. as to dower or fee, the statute would operate to give her the latter estate, taking away the dower-as an element of choice between the provision in his will and the mere chose in action to recover the use of an undivided one half of his lands. Under these circumstances he cannot drive her, by any testamentary provisions, to abandon the fee simple which her silence gave her, and compel her to elect between what provision he made and mere dower. Proceedings to recover dower are at once

a defeasance of the fee-simple estate and a renunciation of the testamentary provision. But neither of those consequences follows here, because the widow has not claimed dower. The controlling alternative is that her omission for one year to sue for dower caused her interest in her husband's lands to ripen into a fee-simple estate in an undivided one third thereof. The statute of 1917 gave her one third in fee because she abandoned her claim of dower. That silent abjuration of dower is her only hold on the fee. Upon that alone does her fee depend. It would be absurd to hold that this same abandonment of dower which created the fee will also work out its destruction.

3. At common law a widow was presumed to be entitled not only to dower but also to the additional provision made for her in the will of her husband, unless that document expressly declared that its bounty was to be exclusive of dower, or else it appeared by necessary implication in plain terms that such was the intention of the testator. In other words, the widow was *prima facie* entitled to both the testamentary provision and her dower, and the burden rested upon those who would dispute it, to show that the husband had expressly declared otherwise, or necessary implication led to the same conclusion. Section 10,070, Or. L., has changed this rule to the effect that "she [the widow] shall not be entitled to both, unless it plainly appears by the will to have been so intended by the testator." That is, to say, our statute reverses the situation and puts upon the widow the burden to show that the testator affirmatively intended that she should have both dower and the bounty of her husband's will. As this statute is in derogation of the common law, it

must be strictly construed. Under this canon of construction it is plain that the statute decrees an election between the devise and dower only.

4. Dower is a contestant in every election the statute imposes upon the widow. Provisions antagonistic to it are not necessarily hostile to each other. The enactment has not provided for or required any election between the provisions of the will in favor of the widow and the one-third fee-simple estate created by the legislation of 1917, Laws of 1917, Chapter 331. The reason for this deduction is found in the fact that the fee-simple estate mentioned and the enjoyment of the testamentary provision arise from and depend upon the same thing, namely the omission of the widow to commence proceedings for the assignment or recovery of her dower. At once they are opposed by and would be destroyed by a claim of dower. The conclusion is, that being incidental alike to and resultant from the same thing, the omission to claim dower, they are cumulative in favor of the widow. In the absence of statute, an election by the widow is to be discountenanced, unless manifestly required either by the express terms of the will or by plain and necessary implication: 1 Pomeroy's Eq. Jur. (4 ed.), § 493.

5. The widow was entitled to take the provision in the will made for her benefit, because that was one effect of her refusing to sue for dower. She was also entitled to take advantage of the additional beneficial provision of the law of 1917 granting a fee springing from the same omission. The estate in fee simple, being one of inheritance, passed to her lineal descendants by the law of inheritance.

The decree of the Circuit Court should be reversed and one here entered to the effect that the plaintiff is the owner of an undivided two thirds of the real property described in the complaint, and the lineal descendants of his stepmother are the owners as tenants in common of an undivided one third of the realty.

REVERSED AND DECREE ENTERED. REHEARING DENIED.

McBRIDE and RAND, JJ., concur.

HARRIS, J., Dissenting.—I am unable to agree with the conclusion reached by my associates. It seems to me that the majority opinion gives Chapter 331, Laws of 1917, an effect which was not intended by the legislature.

That the act of 1917 does not repeal a single section of the Code is manifest from the most casual reading. That the legislature may enact a law requiring the widow to elect between dower and a provision in the will of her deceased husband, or may enact a law permitting her to take both common-law dower and under the will, or may enact a law giving to her in addition to any testamentary provision an undivided one third in fee simple in the lands of which her husband died seised, must be conceded; for this court has repeatedly held that the legislative department may control and regulate the descent and distribution of property. That the act of 1917 is remedial and for that reason should be liberally construed is likewise admitted; but it is not and cannot be conceded that either the right or the duty of the court to apply the rule of liberal construction can be so unduly extended as to authorize judicial

legislation, even though, as suggested in one of the printed briefs filed in the companion case of *Bristow* v. *Jennings,* the concrete facts cry loudly for a generous allowance to the widow. Ours are judicial functions. We cannot make the law. The legislative department enacts the laws, and we can do nothing except to construe and apply them.

Wherever our system of jurisprudence prevails the established rule is that the cardinal point in the construction of a statute is to ascertain the intention of the legislature; and when the legislative intention is ascertained that intention is controlling in the interpretation of the statute: *Byers* v. *We-Wa-Ne,* 86 Or. 617, 630 (169 Pac. 121); *Malloy* v. *Marshall-Wells Hardware Co.,* 90 Or. 303, 320 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589). Indeed, this is the imperative command of the Code for by the express terms of Section 716, Or. L., it is ordered: "In the construction of the statute the intention of the legislature * * is to be pursued, if possible." The intention of the legislature is of course to be ascertained from the language used in the statute, and, if the language is plain, unambiguous and self-construing, judicial inquiry ends with the mere reading of the statute. But where the language of the statute is of doubtful meaning, or where, among other results, an adherence to the strict letter would lead to contradictions, or where there are seeming repugnancies, the duty devolves upon the court to ascertain the true meaning of the legislature; and in the performance of that duty the court may inquire into the policy and purpose of the act, the object intended to be accomplished, the effect and consequence of different constructions, the history and passage of the act, and the like. Furthermore, the statute under

investigation must be construed together with other statutes *in pari materia* for the purpose of arriving at the legislative intention.

Now let us see what the law was prior to the act of 1917; for by so doing we may learn something of the object then sought to be accomplished by the legislature. Section 7286, L. O. L., provided thus:

"The widow of every deceased person shall be entitled to dower, or the use, during her natural life, of one-half part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof."

Section 7316, L. O. L., read as follows:

"Every person of twenty-one years of age and upwards, of sound mind, may, by last will, devise all his estate, real and personal, saving to the widow her dower."

Section 7303, L. O. L., was headed thus: "Widow's Election Between Devise and Dower," and read as follows:

"If any lands be devised to a woman, or other provision be made for her in the will of her husband, she shall make her election whether she will take the lands so devised or the provisions so made, or whether she will be endowed by the lands of her husband; but she shall not be entitled to both unless it plainly appears by the will to have been so intended by the testator."

Section 7304 was headed thus: "Widow Deemed to Have Elected, When," and read as follows:

"When a widow shall be entitled to an election under either of the last two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision unless within one year after the death of her husband she shall commence

proceedings for the assignment or recovery of her dowry.''

The origin of Sections 7286, and 7303, 7304 and 7316, L. O. L., may be found in the territorial Code commonly known as the Code of 1853; and ever since that time these sections have constituted component parts of our Code: See pages 374, 376 and 354, Code of 1853. Sections 7303, 7304, L. O. L., have never been amended. Section 7316, L. O. L., stood in its original form, unaffected by any amendment until 1917; and Section 7286 was amended but once prior to 1917. In 1919, by Chapter 351, Laws of 1919, the legislature restored Sections 7286 and 7316, L. O. L., to the form in which they appeared before the amendment of 1917. However, the law as it existed between the act of 1917 and the statute of 1919 controls the instant case. The primary object of these sections of the Code was to assure to the widow her right to common-law dower, for Section 7286, L. O. L., positively declared: ''The widow of every deceased person shall be entitled to dower * * unless she is lawfully barred thereof.'' That it was the purpose of the legislature to make this right of dower inalienable without her consent is made clear by Section 7316, L. O. L., where it affirmed that ''every person * * may, by last will, devise all his estate, * * saving to the widow her dower''; but it is equally clear that the widow could consent to relinquish her right of dower, and that when she did so consent ''she is lawfully barred thereof'' and was no longer entitled to dower. Under the provisions of the Code she was ''lawfully barred thereof'' by: (1) A conveyance, Section 7298, L. O. L.; (2) by a jointure, Sections 7299 and 7300,

L. O. L.; (3) by a pecuniary provision before or after marriage, Sections 7301 and 7302, L. O. L.; and (4) by will, unless it plainly appears by the will that the testator intended the widow to have dower and also to take under the will. Of course the death of the husband plus the existence of the will did not upon the death of the husband *eo instante* bar dower, as in the case of a conveyance, or in the case of a jointure settled on her with her assent before the marriage, and the bar was not and could not be consummated until an election, actual or constructive, to take under the will occurred. However, the dominant note in Section 7303, L. O. L., is found in the words "she shall not be entitled to both" dower and under the will unless it plainly appear by the will that the testator so intended. By force of the terms of Section 7303, L. O. L., an election was inevitable, inescapable and unavoidable; and if either actually or constructively the widow elected to take under the will, then she was by the overpowering force of Section 7303, L. O. L., barred of dower and consequently was not a widow who was "entitled to dower." In brief, the law offered to the widow the right to take under the will or to take dower; she could take either, but she could not take both.

Now let us turn to Chapter 331, Laws of 1917, and read its title and so much of the body of the act as is material here. Section 7316, L. O. L., is amended so as to read as follows:

"Every person of twenty-one years of age and upward, of sound mind, may, by last will, devise all his estate, real and personal, saving to the widow her dower or her election thereunder."

It will be observed that this section was amended by adding the words "or her election thereunder." Just as before amended this section meant that the testator could not without consent of the widow deprive her of her common-law dower, so after amendment it meant that the testator could not without her consent deprive her either of common-law dower or of her right to elect to take an undivided third in fee in lieu of common-law dower.

Section 7286, L. O. L., was amended so as to read as follows:

"The widow of every deceased person shall be entitled to dower, or the use, during her natural life, of one-half part of all the land whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof; provided, however, that any woman entitled to dower, may, at her election, take in lieu of such dower the undivided third part in her individual right in fee of the whole of the land whereof the husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof. And provided further, that when a widow shall be entitled to an election under this section, and shall be deemed to have elected to take the undivided third of such lands unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

It will be observed that this section was amended by adding the words beginning with the words "provided, however."

What was the manifest intention of the legislature? Is it reasonable to say that the legislature intended to give an undivided third in fee in addition to dower or in addition to a devise or legacy? Such a supposition assumes a complete departure from

the legislative purpose of allowing only one thing
to the widow. Is it not plain and clear and obvious
that the right to an undivided third in fee is only
an alternative right? Is it not a thing in lieu of
another thing? We may readily understand the rea-
sons which prompted the legislature to enact the
amendment of 1917. It frequently happens that a
husband leaves an estate consisting of nonincome
producing land, and in such a case it may be that a
mere life estate is practically valueless, and conse-
quently the life estate is worth but little or nothing,
whereas an undivided third in fee would be of some
value and would be salable, so that the widow could, if
she wished, sell it and thus obtain funds. Does not the
title of the act inform us that the undivided third
in fee is in lieu of dower? Are we not in express
and undeniable terms informed in the body of Sec-
tion 7286, L. O. L., that the undivided third is "in
lieu of such dower"? The words "in lieu of" con-
strue themselves; their meaning is not debatable,
for in plain English they mean "instead of"; "in
place of"; "in substitution for." Century Diction-
ary; 4 Words and Phrases, 3476. And as the words
"in lieu of" are here used they alone and of them-
selves imply that the right to take dower existed
but is replaced by the thing which is substituted:
See *National Sewing Machine Co.* v. *Willcox & Gibbs
Sewing Machine Co.,* 74 Fed. 557 (20 C. C. A. 654).
This implication attains the strength of an express
declaration when we read that the widow "may at
her election take in lieu of dower." An election
necessarily implies the existence of two or more
things. The one third in fee is one thing, and this
one thing is a substitute for only one other thing,
and that other thing is common-law dower; and

therefore if the right of dower does not exist at the very moment of election there is no right of election. Indeed, in express terms the widow is accorded the right to elect to take dower only when she is "entitled to dower" and "is not lawfully barred thereof." But the widow is barred of dower if she takes under the will; and if she is so barred then she is not entitled to dower, and not being entitled to dower is not entitled to the substitute for dower. In the instant case there never was a moment when it could be definitely and positively stated that the widow was "entitled to dower," although for one year after the death of her husband it could be conditionally stated that she was "entitled to dower"; but since the condition of electing to renounce the will never happened we can now say after the lapse of the year that she was not "entitled to dower," for she barred her right to dower by taking under the will; and let it not be forgotten that a widow "lawfully barred thereof" cannot take dower. It seems to me that, both by the language used in the title of Chapter 331, Laws of 1917, and by the language appearing in the body of the act, the legislature evinced a purpose to give to a widow the right to take a third in fee only as a substitute for common-law dower and to preserve to the widow the right of election and to require her to exercise an election either actually or constructively, for Section 7316, L. O. L., when prescribing who may make a will saves to the widow "her dower *or her election thereunder.*" Does not this amendment of 7316, L. O. L., necessarily imply that the widow can have an undivided third only if she elects to take it? An election means a choice between two or more things. The antecedent of the word "thereunder" may

seem to be obscure, but when we remember that the
words "or her election thereunder" were added only
because of the amendment of Section 7286, L. O. L.,
and for the purpose of fitting with that amendment
and then were subsequently eliminated in 1919 by
the same amendatory act which restored Section
7286, L. O. L., to the form in which it appeared prior
to 1917, it becomes clear that the words do not relate
back to the word "will," but that they relate to the
election which is provided for in Section 7286,
L. O. L., as amended. It likewise seems to me that,
both by the language of the title and by the lan-
guage of the body of the act, the legislature nega-
tived any motion that the undivided third would be
cast upon the widow as a supplement to a testa-
mentary provision made for her and accepted by her.
Let us again look at Section 7286, L. O. L., as
amended by the act of 1917. The last sentence in
the section, it seems to me, places the question be-
yond further debate. The sentence reads as follows:

"And provided further, that when a widow shall
be entitled to an election under this section, she
shall be deemed to have elected to take the undivided
third of such lands unless within one year after the
death of her husband she shall commence proceed-
ings for the assignment or recovery of her dower."

Now, when is the widow deemed to have elected?
The answer is, when and only when she *"shall be
entitled to an election under this section."* How can
she be entitled to an election under this section unless
a situation arises where she can choose between a
life estate and the undivided third in fee. In the
instant case can it be said that the widow was "en-
titled to an election under this section"? Taking
under the will barred her right to take a life estate,

and with that right barred there could be no election. If there be no bar to be considered except that of the will, then if there is no will there is no possibility of a bar to dower; but where there is a possibility of a bar by will both the right of dower and the right to take under the will are in a state of suspension until the moment of election. And if when the election occurs the bar is chosen, then at that very moment the suspended right of common-law dower is utterly extinguished.

What is the effect of the majority opinion? The majority opinion declares that if there be no will the widow can take one third in fee, or she can take common-law dower, but she cannot take both a life estate and one third in fee, because if she takes common-law dower she cannot take that which is allowed only as a substitute, and if she takes one third in fee she takes it only as a substitute, and hence cannot also take the thing for which it is substituted. The majority opinion also holds that if there be a will, then the widow may take common-law dower or under the will; and if she takes common-law dower she relinquishes her right to take under the will, and of course acquires no right to a one third in fee because that estate is only a substitute; but if she takes under the will she bars her right to take common-law dower, and notwithstanding she "is lawfully barred thereof," and for that reason not entitled to dower, she has cast upon her a substituted estate when the original thing for which it serves as a substitute cannot be taken. If she takes under the will she has forced upon her the substitute although she could not take under the will and also take the original thing even though she devoutly wished to do so.

If the writer has correctly interpreted the legislative intention. then that intention must be pursued if possible. This court has held that when the intention of the legislature is ascertained "such intention and the object aimed at controls the literal interpretation of particular language in a statute, and an expression capable of more than one meaning must be taken in the sense harmonizing with such intent." *State* v. *Young,* 74 Or. 339, 403 (145 Pac. 647). This court unanimously approved the following rule as announced in Lewis' Sutherland on Statutory Construction (2 ed.), Section 347:

"It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject matter is once clearly ascertained and its general intent, a key is found to all its intricacies;—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent." *State* v. *Hyde,* 88 Or. 1, 49 (169 Pac. 757, 171 Pac. 582, Ann. Cas. 1918E, 688).

'Another rule universally accepted is:

"Where a statute deals with a genus, and the thing which afterward comes into existence is a species thereof, the language of the statute will generally be extended to the new species." 36 Cyc. 113.

Section 7303, L. O. L., affords to the widow the right to elect to take under the will or to take dower, but it also declares that "she shall not be entitled to both" unless it plainly appears otherwise by the will. Section 7304, L. O. L., affirms that the widow is deemed to have elected to take under the will "unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower." Neither Section

7303 nor Section 7304, L. O. L., has been amended
since the adoption of the code of 1853, and so they
read in 1918 exactly as they read before the enact-
ment of Chapter 331, Laws of 1917. When Section
7286, L. O. L., was amended in 1917 the amendment
created the privilege of electing between dower and
an alternative estate consisting of a third in fee,
and the amendment also declared that the widow is
deemed to have elected to take one third in fee
"unless within one year after the death of her hus-
band she shall commence proceedings for the assign-
ment or recovery of her dower." The sole circum-
stance that the language last quoted was apparently
taken *verbatim* from Section 7304, L. O. L, is ex-
alted by the majority opinion and made the all-con-
trolling factor, and to it every other of the many
opposing circumstances in both the title and the
body of the estate is made subservient.

If it was the purpose of the legislature to give to
the widow the right to take one third only when the
circumstances were such that she could take common-
law dower if she had wished to take such dower,
then the legislative purpose is balked by the con-
struction which makes a single circumstance all-con-
trolling in face of the fact that there are many
opposing circumstances. But if the legislative pur-
pose was to allow one third in fee only when the
situation was such that the widow could have elected
to take common-law dower, then that legislative pur-
pose need not be balked but can be fully executed
if only we apply the rules of construction which
have been formulated in order that the legislative
intention may be pursued.

It may readily be conceded that before the amend-
ment of 1917, the dower referred to in Section 7304,

L. O. L., was a life estate or common-law dower as defined in Section 7286, L. O. L., for at that time the Code included but one species of the genus dower, and that species was a life estate, or common-law dower. The amendment of 1917 created an alternative right consisting of an undivided third in fee which the widow could elect to take in lieu of common-law dower; and there can be no valid objection to calling this substitute "election dower," for, indeed, this is the identical name given to it in some of the states; and, moreover, some forms of jointures are known as equitable dower. The substitute provided for by the act of 1917 may then be appropriately called election dower and treated as a new and purely statutory species of the genus dower, and when so treated the word "dower" as used in Section 7304, L. O. L., may be expanded so as to embrace both species of dower provided by Section 7286, L. O. L., as amended. If, then, the widow wishes to renounce the will and elect to take a life estate, she must do so by commencing proceedings in the manner prescribed by statute for the assignment or recovery of the life estate. The Code does in fact prescribe a procedure for the assignment or recovery of a life estate, but there is no proceeding prescribed by statute for the assignment or recovery of an undivided third in fee, or election dower, and, hence, under the authority of Section 983, Or. L., in effect since 1862, any process or mode of proceeding may be adopted which may appear most conformable to the spirit of the Code. A suit in partition would be adequate; or the filing of a paper with the County Court renouncing the will and declaring a wish to take election dower ought to be sufficient. This seeming repugnancy between Sections 7286 and 7304,

L. O. L., may be dissolved, and by so doing full effect and meaning may be given to every other word in every one of the sections in the Code. If the word "dower" appearing in Section 7304, L. O. L., is not expanded, then the entire body of Sections 7286 and 7316, L. O. L., must be contracted and warped and the plain and ordinary meaning of many of the words entirely ignored. The expansion of a single word in Section 7304, L. O. L., will conform with the spirit and purpose of the statute and accomplish the object at which the statute was aimed. The case of *Goltra* v. *Penland*, 45 Or. 254, 264 (77 Pac. 129), furnishes an example, which we here should follow, of the application of the rule which permits the court to dissolve a contradiction or repugnancy by construing a statute according to its spirit and purpose rather than according to the technical meaning of the words used.

It is my conclusion that under the law as it was in 1918 no widow could take an undivided third in fee by an election, either actually or constructively made, unless she was a widow who was "entitled to an election"; that a widow was not "entitled to an election" unless she was entitled to common-law dower; that she was not entitled to common-law dower if her husband made provision for her in his will, unless she renounced the will. Where there was a will the right to an undivided third in fee was dependent upon the right to common-law dower, and the latter was in turn dependent upon a renunciation of the will. Until renounced the will was an insurmountable obstacle to the taking of either common-law dower or election dower. For the foregoing reasons, I dissent from both the reasoning and the conclusion of the majority of the court. The decree ought to be affirmed.