Argued by appellants and submitted on brief by respondent
October 8; reversed November 5, 1929

# HUGH R. SMITH *v.* SYLVIA SMITH HYETT ET AL.

(281 Pac. 826)

4

For appellants *Sylvia Smith* and *J. W. Hyett* there was a brief over the names of *Messrs. Keyes & Page* with an oral argument by *Mr. E. M. Page.*

For appellant *First National Bank* there was a brief and oral argument by *Mr. Custer E. Ross.*

For respondent there was a brief over the name of *Mr. Willard H. Wirtz.*

McBRIDE, J. The case presented by the complaint is in many respects different from the case attempted to be proved at the trial. In the case presented by the complaint the plaintiff claimed that when he signed the receipt and election or waiver contained therein he was ignorant of the contents of the will and of his rights thereunder; that he received no money at the time of signing the receipt, either from his daughter or any other person; that he had no knowledge of the contents of the paper he signed, and that his signature to the same was procured by fraud and deceit. On the trial he admitted that long before he signed the receipt Judge Bingham had informed him substantially of the contents of the will and of his right to take one-third of the property; and before he signed the receipt, Mr. Ross, the attorney who drew the receipt, informed him of his rights under the will, and that there was a long discussion as to whether he should relinquish them, which he says he refused to do, but claims that he finally signed, because Ross told him it was necessary to sign as a witness. It is evident that he dealt unfairly with his attorney in the first instance by misstating his case as that attorney, who is known to be careful and skillful, would never have drawn the complaint in the shape it appeared had his client fully and fairly stated the facts as they appeared on the trial. The evidence shows conclusively that he had read and had full knowledge of the contents of the will before it was probated; that he well knew that under its provisions he was entitled to elect to take either $100 or a one-third interest in the fee; that he had been advised to take the fee by Judge Bingham; and we are satisfied from the evidence that he signed the receipt intending at the time to waive all his right in the property.

The court below found, substantially, that no fraud was practiced upon him to induce him to sign the receipt and the evidence satisfies us that he was paid by a check of his daughter's to the amount of $100 specified in the will, and that it was his intention at the time to waive all the rights he might have in the property and allow his daughter to have the fee devised as her own property. The question is not altogether what was intended—that, as we have just remarked, is satisfactorily shown—but, whether plaintiff's acts were sufficient to enforce that intention.

The will of Addie G. Smith, plaintiff's wife, was made in 1916. At that time the statute, so far as it relates to the present controversy, allowed the husband to take as curtesy a life interest in one-half of the land owned by the wife at the time of her death. Primarily, the statutes read as giving dower to the wife, but another section makes every provision in favor of the wife applicable reciprocally to the husband's curtesy and rights thereunder.

Section 7303, L. O. L., at the date of the execution of the will, read as follows:

"If any lands be devised to a woman, or other provision be made to her in the will of her husband, she shall make her election whether she will take the lands so devised or the provisions so made, or whether she will be endowed by the lands of her husband; but she shall not be entitled to both unless it plainly appears by the will to have been so intended by the testator."

Section 7304, L. O. L., reads as follows:

"When a widow shall be entitled to an election under either of the last two preceding sections, she shall be deemed to have elected to take such jointure, devise, or other provision unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

In 1917, Laws 1917, chapter 331, a sweeping change was made in the law relating to dower and curtesy as indicated by the following. Section 7316, L. O. L., was amended so as to read as follows:

"Every person of twenty-one years of age and upward, of sound mind, may, by last will, devise all his estate, real and personal, saving to the widow her dower or her election thereunder."

Mrs. Smith died in 1918, and consequently the act of 1917 governs this case. In 1919 the legislature repealed the act of 1917 and re-enacted the law as it existed previous to 1917. The amendments of 1917 never found their way into any codification and were therefore not so generally known as the preceding statutes, which were codified in Lord's Oregon Laws and again appear in Oregon Laws, the codification of 1920. The 1917 amendment was in form just long enough to create much confusion and misunderstanding in regard to the devolution of real property. The act was hastily passed and hastily repealed, an unfortunate procedure where so important a matter as the passing of title to real property is concerned.

In *Walters v. Waggener,* 104 Or. 682 (208 P. 753), it was held, not without vigorous dissent, that by the failure of a widow to apply for admeasurement of dower within one year she waived her dower right by operation of the statute, which so provided; but did not waive the alternative right to take one-third of the devised land in fee as provided by chapter 331, Laws of 1917. In that case there was no election or waiver in fact, but simply the election implied by statute from the failure to make timely application for admeasurement of dower.

The next case that came before the court was *Bristow v. Jennings*, 105 Or. 1, 3 (207 P. 863), which involved the definition of rights arising under a will made and probated while the 1917 statute was in force. The conditions of the will as stated in the opinion are as follows:

"Augustus C. Jennings died December 23, 1917, leaving a widow, the defendant herein, and also 10 children by a previous marriage. By his last will and testament he devised and bequeathed to the defendant for use during her natural life the real property upon which decedent and the defendant resided, consisting of one lot and fractional lot in the city of Eugene, also all household furniture in the premises mentioned, including family supplies and feed for cow and chickens on hand at the time of the testator's death. It was also provided in the will that in the event of defendant's remarriage within two years after the testator's death, defendant should have the free use of the premises devised to her for two years thereafter, or in the event of her death, the property should at once revert to the 10 children of the testator, or the issue of their bodies, share and share alike. An undivided one tenth to all the remainder of the testator's property, after payment of debts, expenses of administration and special bequests, was devised to each of the 10 children of the testator. The property left by decedent, other than that devised to defendant consisted of two lots and a fractional lot in the city of Eugene and 260 acres of land in Lane county and personal property of the approximate value of $750."

In this case there was no indication that the husband intended that the provision in the will should be in addition to her dower right and it was held in pursuance of the statute, she was presumed to have elected to take under the will, and it was held that, as she did not take any steps to recover her dower, she was presumed to take under the will under the statutory provision for implied election. But again, the question

of election between dower and a right to take a one-third of the land in fee was discussed. This time by a different department of the court from that which decided *Walters v. Waggener,* supra, although Chief Justice BURNETT, who wrote the opinion in that case, sat in the latter case and concurred in the opinion. The opinion states the contentions of the parties as follows:

"In support of the decree of the circuit court, plaintiffs insist that defendant was compelled to elect between the provision made for her by the will and the rights given her by statute, and that having failed to commence proceedings for the recovery of her dower, she is conclusively presumed to have taken under the will, and that by such action she relinquished or waived her right to dower, and with it, the right given her by statute to take in lieu of dower the undivided one-third part of the lands of her husband."

Further in the opinion it is said:

"Defendant did not take any steps to recover dower, and as between her right to take the provisions of the will and her right to dower, defendant is deemed to have elected to take under the will; the statute declares that to be her choice of those rights, 'unless within one year after the death of her husband she shall commence proceedings for the assignment of recovery of her dower' ": O. L., § 10071.

"Likewise, as between her primary right to dower and her alternative right to take in lieu thereof an undivided one-third in fee of the lands of her husband, defendant is deemed to have elected to take the fee. Section 1, chapter 331, Laws of 1917, adopted the language last above quoted, and provides that a widow 'shall be deemed to have elected to have taken the undivided third of such lands unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower.'

"By force of those statutes, dower is simultaneously relinquished or waived in both cases. In the

one case the provisions of the will are accepted in preference to dower, while in the other, dower is rejected, and in lieu thereof the right to an undivided third part in fee of the lands of the husband is taken. But in all this, no choice or election was made by defendant between the provisions of the will and her statutory right to an undivided third part in fee of the lands of her husband.

"It is reasonable to suppose that the legislature intended by chapter 331, Laws of 1917, to enlarge the rights of widows, but the extent to which those rights were enlarged must be gathered not only from the enactment itself, but by a consideration of related statutes and the general rules of law which apply to such cases. Cases may arise where a widow put to her election, may have elected to take the provisions of the will in preference to dower, but who having a choice between the provisions of the will and the one-third part in fee of the lands of her husband, will elect in favor of the latter right. In the absence, as here, of a clear and unmistakable intention of the legislature to so provide, it will not be presumed that the legislature intended that a widow should take both the provisions of the will and her statutory right to an undivided third part in fee of the lands, where the will of the husband expressly declares, or it appears by clear implication that the provisions of the will were intended to be in lieu of such statutory right. In cases such as those last mentioned, the widow must elect between the provisions of the will and her statutory right to take an undivided third part in fee of the lands, and without a statute controlling the obligation, time and manner of election in such cases, the general rules of equity in respect to the doctrine of election apply.

"Under those rules the election must be made within such time as is reasonable under all the circumstances of the particular case: 40 Cyc. 1975.

&ast; &ast; &ast; &ast; &ast;

"In the instant case it is unnecessary to determine whether the will imposed upon defendant the obligation to elect between the testamentary provisions in

her favor and the right to an undivided part in fee of the lands of the testator. The lands in which defendant was devised a life estate are not involved in this suit. If no election was required, defendant takes both the benefits given her by the will and those flowing from her statutory rights, and if defendant was required to take such an election, her answer in this case and her assertion and prosecution of a claim to an undivided one-third part in fee of the lands in suit constitutes an election to take her statutory rights, which election under the circumstances of this case was made within a reasonable time. In either case defendant is entitled to, and is the owner of, an undivided third part in her individual right in fee of the lands described in plaintiff's complaint.''

■ The general tenor is, although the question is not expressly decided, that somewhere within a reasonable time the legatee should elect whether to take under the provisions of the will or the one-third interest allowed by law. The case of *Bristow v. Jennings,* supra, is the latest utterance on this subject and still leaves the question of express election and waiver undecided. In both of these cases the waiver or election arose by implication of law. In this case we have an express waiver of statutory rights. ''I hereby elect to take under the will of said deceased and not the share allotted to me by law.'' What was the share allotted to plaintiff by law? It was an alternative; either a life interest in one-half of the property or one-third interest in fee. Plaintiff knew what that interest was. He had been told by Judge Bingham, and advised by him to retain it. He was also told by Ross and yet, if the writing signed by him means anything it means a renunciation of his statutory right of the share allotted to him by law. His act is affirmative and not negative. He did not stop with waiving his right to curtesy, but waived *all* his right under

the statute simultaneously. He could do this. As was said by a noted English judge long ago, "A man can not have an estate put into him in spite of his teeth."

██ There can be no doubt that one can expressly waive any right accruing to him, or which he is entitled to claim irrespective of the technical statutory election. No estate in the land devised to Mrs. Sylvia Smith Shepherd, now Mrs. Sylvia Smith Hyett, passed until his election on the question of accepting the provisions of the will instead of curtesy. In this situation he not only expressly waived his curtesy but what he had a right to receive in lieu of curtesy. If he had confined his acceptance of the $100 alone to his curtesy, perhaps, he would have been in a better position to urge his claim to one-third in fee of the land, but knowing that the law allotted to him a one-third of the land in lieu of curtesy he, in our opinion, deliberately waived the whole statutory allotment whether it was curtesy or its alternative. A waiver must be with a knowledge of one's right, and he had this. It must be with intention to waive a right and, that he intended to do so, is shown, not only by the terms of the instrument but is indicated by his conduct. For eight years he stood by allowing his daughter to deal with the land as her own, to lease it in her own name, to pay the taxes upon it, to incur obligations to the extent of several thousand dollars, which if her estate is diminished must be paid by her, and he has never uttered one word to her in assertion of his claim on the property. Taking this as an evidence of intention to waive any claim to the property, it seems almost conclusive and, while waiver and estoppel are not always identical, we think his conduct may be fairly considered as an equitable estoppel. In addition to these evidences of intent, we have the testimony of

J. W. Hyett, the present husband of defendant Mrs. Hyett, which is as follows:

"Well, I was in the service for a while, and when I came back from the service I happened to drive through the country and Hugh was out in front of the home and I stopped and we visited, and were talking about one thing and another, and the fact that while I was in the service Mrs. Smith had passed away, and he was telling me what a fine thing he had done for Sewell and Sylvia. He said 'I gave them my interest in the property'; and he said, 'I could have had it, but I wanted to see them have a good start'; words to that effect, and he said, he just gave them that property— his interest in it."

It is true that plaintiff denies this testimony, but he has been shown to be so inaccurate in every particular all through the case that we feel justified in giving Hyett's statement credit for truth, even though he may be as greatly interested as plaintiff. So far as reliability is concerned, plaintiff is contradicted in nearly every particular of his testimony. His own admissions show that he did not make a full and true statement of his case to his attorney. He is contradicted by Mrs. Hyett and Mr. Ross as to what took place when the receipt was signed. He is contradicted by Mr. Carson in regard to interviews in his office. He is contradicted by Mr. and Mrs. Lindholm in his statement that he had not read the will until after he had signed the receipt. In short, there is hardly a single material point in the case in which he is not contradicted, and we feel justified in saying that he is an impeached witness.

For the reasons herein given, the decree of the circuit court is reversed and an order will be entered here dismissing the case.   REVERSED AND CASE DISMISSED.

COSHOW, C. J., RAND and BEAN, JJ., concur.