(9 Misc. Rep. 504.)

### In re BACKES' WILL.

(Surrogate's Court, Erie County. August, 1894.)

CHARITIES—BEQUEST FOR MASSES.

> A will directed the executor "to cause masses to be read * ·* * for any balance of cash money which might be left after the payment of her just debts, doctor bills, and funeral expenses." At the time the will was executed, testatrix had $250 in money, but at the time of her death she had a larger sum. *Held*, that the executor would be directed to apply the sum of $250, after deducting the debts and funeral expenses, for the reading of masses.

Proceeding for the probate of the will of Katharine Backes, deceased.

Frederick W. Ely, for petitioner.

George T. Hogg, for Jacob Backes.

Frederick G. Bagley, for Peter, Nicholas, and Joseph Backes, Barbara Neuner, and Margaret Beyer.

STERN, S. Katharine Backes died in Buffalo, N. Y., on the 2d day of January, 1894, aged 70 years. She left surviving seven children, the youngest of whom is over 30 years of age. Prior to the making of her will, she divided $1,200 among her children. After making such division, she had left about $250 cash. She made her will in August, 1891. It provides that her daughter Katharine should take the property, excepting her cash money. It directs her executors "to cause masses to be read in a German Catholic church in the city of Buffalo, for herself and her deceased husband, for any balance of cash money which might be left after the payment of her just debts, doctor bills, and funeral expenses." The will further makes it known that prior to the execution thereof she has paid to each of her seven children $171.40. All her children, except Katharine, object to the probate of the will. The evidence shows that all the formalities required by law were complied with, and that at the time of the execution of the instrument the testatrix was of sound mind, memory, and understanding. The objections must therefore be overruled, and the will admitted to probate. In Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, Judge Rapallo says:

> "In this case the agreement was to expend the surplus, if any should remain after providing for the support of Mrs. Gilman and her husband, and their funeral expenses and monument, in procuring certain masses to be solemnized according to the ritual of the Roman Catholic Church, of which they were members,—a duty quite definite and easy of performance on payment of the customary charges. We concur with the court below in holding that there was nothing illegal in the purpose, nor can any person rightly com-

plain that it involved any injustice. The money was her own. She disregarded no ties of kindred, for she had none; and she undertook to devote her little accumulations to the benefit of herself and her aged husband so long as they might live, and to securing them a becoming burial, to be followed by those religious ceremonies which, according to their belief, were important."

In Holland v. Alcock, 108 N. Y. 329, 16 N. E. 305, the same judge says:

"The efficacy of prayers for the dead is one of the doctrines of the Roman Catholic Church, of which the testator was a member, and those professing that belief are entitled in law to the same respect and protection in their religious observances thereof as those of any other denomination. These observances cannot be condemned by any court, as matter of law, as superstitious, and the English statutes against superstitious uses can have no effect here. Const. U. S. Amend. art. 1; Const. N. Y. art. 1, § 3."

Judge Cullen, in a case before him (reported in N. Y. Daily Reg., Jan. 29, 1886, and quoted in Holland v. Smith, 40 Hun, 372), says:

"I think a provision for masses for the benefit of the testator's soul is exactly akin to a provision for his funeral or monument. While decent burial is given, by law, out of even an insolvent's estate, I think the monument is no more an adjunct or concomitant of burial than the masses."

It would be useless to cite other authorities on this question. The views above expressed are ample and sufficient.

Had the testatrix died, leaving only the $250 cash to pay her debts, doctor's bills, funeral expenses, and masses for the repose of her and her deceased husband's souls, it is not likely that her children would or could have made any objections, because the appropriation would have been in accordance with her station in life. But it now happens that, instead of the last-mentioned amount, she had $900 cash. The intention of this was very plain. Having reached the age allotted to mankind, and being warned of approaching death, she divides her property among her children, retaining about $250,—enough, in her judgment, to pay her debts and funeral expenses, and to defray the charges for the solemnization of masses for herself,—and remembering her husband, who has gone before her, she has the sacred rites of the church administered in his behalf. The intent of the testator is the rule of construction. Whenever the expressed intention can be ascertained the court must carry it into effect, provided it can be done without doing violence to some rule of law. In Emans v. Hickman, 12 Hun, 425, the testator gave to his executor all his property, amounting to about $1,200, for his funeral expenses and monument. The court, in construing the effect of this appropriation, held that the deceased did not intend to give all, but only such an amount to be expended for a monument as would be reasonable, and accordingly allowed $150 for that purpose. In re Boardman's Will (Surr.) 20 N. Y. Supp. 60, the testator provided that after the payment of his debts the balance of his real and personal property should be expended in the building and erecting of a monument, together with suitable fence and fixtures. The surrogate held the true construction to be that a reasonable amount should be expended for that purpose, and allowed $500. It is fortunate that her property in-

creased, otherwise the litigation of her children over her will would undoubtedly have swallowed up the money, and the court would have been unable to carry out the intentions of the deceased, which are always more sacred than the wishes of the living. The testatrix was a member of St. Mary's Roman Catholic Church. She had a right to appropriate a reasonable amount of her money in offering masses for the remission of her and her deceased husband's sins. The direction to her executor to have the masses said in a German Catholic church in Buffalo is not indefinite. The deceased could not have intended any other than a German Roman Catholic church. There is no difficulty in carrying out the direction of the testatrix. I decide that the direction contained in the will for the masses is valid; that the executor expend for masses the amount intended by the testatrix, which is the difference between the sum of $250 and the amount of her debts and funeral expenses. The residue of her cash money, amounting to about $650, must, after the payment of the necessary expenses of the administration of her estate, be distributed as though she died intestate. Decreed accordingly.