### In re WARNER'S ESTATE.

(Surrogate's Court, Rensselaer County. December 14, 1902.)

1. WILLS—CONSTRUCTION—LEGACIES—DEMONSTRATIVE—GENERAL.

A testatrix, after authorizing her executors to erect a monument over her husband's grave at an expense not exceeding $500, to be taken from the "four thousand dollars advance" made by her from a sale of her property, bequeathed the balance thereof to three persons equally for life, and on their death to their respective children, followed by general bequests to two other persons. At the death of the testatrix, ten years after the date of the will, there was no evidence to establish that the $4,000 advance existed as a separate and distinct fund, or that she ever separated and set apart the same. *Held* that, though the gifts out of the balance of the $4,000 advance were demonstrative legacies and payable out of the particular fund, if existing, in preference to general legacies, the legatees must share pro rata with the general legatees; there being no identified fund applicable to their payment.

2. ADMINISTRATION OF ESTATES—PROOF OF CLAIM—SUFFICIENCY.

Evidence in proceedings to establish a claim against the estate of a decedent for services rendered by a sister in caring for and nursing her *held* insufficient to render the estate liable therefor.

3. SAME—DEGREE OF PROOF.

Claims against the estate of a decedent, made by near relatives for personal services rendered in the last sickness of the decedent, are regarded with suspicion and require stronger proof than ordinary claims made by strangers.

4. SAME—JURISDICTION OF COURT—CONSENT OF PARTIES.

Under the direct provisions of Code Civ. Proc. § 1882, the surrogate may hear and determine claims of third persons against the estate of a decedent, on the judicial settlement of the accounts of the executor or administrator, only in case the parties file a written consent that the claims be then heard.

5. SAME—DEBT DUE FROM LEGATEE.

Where a legatee owes a debt to the testator greater than the legacy, the amount of the legacy should be credited on the indebtedness in full satisfaction of the legacy.

In the matter of the estate of Mary B. Warner, deceased. Decree entered on judicial settlement.

N. B. Spalding, for executors.

W. Frothingham, for Mrs. Jenks and others.

W. Frothingham, special guardian, in pro. per.

Joseph A. Murphy, for claimants Susan and William Smith.

HEATON, S. Judicial settlement of the accounts of Horace Bennett and Susan Smith, executor of the will of Mary B. Warner, deceased, tried before former surrogate, Hon. A. C. Comstock, and brought on for decision by me, upon notice of motion. It is necessary to construe the will of deceased and also pass upon two alleged claims. Mary B. Warner died April 12, 1898, leaving a will dated May 21, 1888, which was probated July 20, 1898. Horace Bennett, a brother, and Susan Smith, a sister, of deceased, qualified as executors, and on the 28th day of September, 1898, filed an inventory of the personal estate of deceased, which showed furniture, etc., of the value of $124.75; two bonds and mortgages against Horace Bennett,

¶ 5. See Executors and Administrators, vol. 22, Cent. Dig. § 1170.

of $1,000 and $2,422, respectively, with unpaid interest of $418; debenture bond of $500, on which had been paid in dividends $175, inventoried at $100; cash in Albany City Savings Bank, $518.45, in the Exchange Bank of Albany, $557.23, and in the National Bank of Castleton, N. Y., $99.20,—total, $5,240.27. By her will Mrs. Warner disposed of $7,000 specifically, besides giving the residue to her sister, Mrs. Smith. Deficiency of assets to pay all legacies in full has brought about a contention between the relatives of her husband, who were bequeathed $3,500, and her other relatives, who were bequeathed $3,000. The will provides as follows:

"First. I hereby authorize my executors, whom I shall nominate, to erect a monument over the grave of my husband (Bennett Warner), the expense not to exceed five hundred dollars. Said sum of money shall be taken from the four thousand dollars advance, which I made from the sale of my property to J. W. Collins.

"Second. I give, devise, and bequeath the use of one-third of the balance of said four thousand dollars to Egbert L. Warner during his natural life, and at his decease I give, devise, and bequeath said one-third of balance to his children.

"Third. I give, devise, and bequeath the use of one-third of the balance of said four thousand dollars to Fannie M. Jenks during her natural life, and at her decease I give, devise, and bequeath said one-third of balance to her children.

"Fourth. I give, devise, and bequeath the use of one-third of the balance of said four thousand dollars to Ida · B. Way (daughter of Bennett Warner, deceased) during her natural life, and at her decease I give, devise, and bequeath said one-third of balance to her children."

Then follows a bequest of $2,000 to her brother, Horace Bennett, and the use of $1,000 to Julia Ann Burton, her sister, for life, with remainder over to Horace Bennett, and the residue to her sister, Susan Smith.

With gifts aggregating $7,000, and assets of less than $5,000 for distribution, it becomes a vital question whether the legacies to the husband's relatives are specific, demonstrative, or general, and whether the $4,000 fund, or any part of it, was in existence at the date of the death of Mrs. Warner, so that, if the legacies of that fund were specific, such money or securities could be delivered, or, if demonstrative, they could be paid from it. While the intention of the testator is to be looked for in the will, and relates to the time of the. execution, the general rule is well established that the will speaks as of the date of the testator's death in reference to property, and until that event the specific subject of the · gift is undefined. Ametrano v. Downs, 62 App. Div. 405, 70 N. Y. Supp. 833.

The evidence wholly fails to establish "the four thousand dollars advance" existed at the time of her death in any such separate and well-defined form that it could be the subject of a specific legacy. Neither does the evidence show clearly and satisfactorily that at the time of her death the fund of $4,000, representing the advance which she made on the sale of the farm to Collins, existed as a separate and distinct fund, made up of any certain deposits or securities. There is a little evidence, conflicting, uncertain, and hearsay in character, tending to trace some part of this original money into securities now on hand; but it is wholly insufficient upon which to base a finding

that such money had been in fact separated and continued as a special fund to meet the requirements of the will. Ten years elapsed from the making of the will until the death of Mrs. Warner. Either during all that time she kept the "advance" money in such form that it could be identified at her death in accordance with the scheme of her will, or she mingled it indiscriminately with her other moneys. Had she acted in the former manner, there would have been abundant evidence of the identity of the fund, which the able counsel would have produced. It does not appear from the evidence that at any time Mrs. Warner ever separated and set apart this fund, and therefore the evidence is wholly insufficient to trace into the securities or deposits which she left any part of the alleged "fund," which is not shown to have ever been in existence. From a careful examination of the will and the little evidence adduced, it appears to have been the intention of Mrs. Warner to give to her husband's relatives, and to devote to the erection of a monument at his grave, the money which she made on the sale of the farm which was deeded to her by her husband. The line of separation is very clear in her will. The remainder of her property, being that acquired by her own exertions, she gives to her own relatives. Unfortunately, however, she has failed to accomplish her intention. The gifts in the second, third, and fourth clauses are not specific legacies. They are each a gift of "one-third" of the balance of said "four thousand dollars." Such $4,000 is not mentioned as being on deposit in any bank or invested in any way. A fund may be referred to; but a particular fund actually existing in a particular place and in a defined form is not given. Hence the legacies are not specific. In re Newman, 4 Dem. Sur. 65; Beck v. McGillis, 9 Barb. 35; Giddings v. Seward, 16 N. Y. 365.

Mrs. Warner did not give a certain bank deposit, or security or securities; but, feeling that she had $4,000 which in justice ought to go to her husband's relatives, measured her gifts to them by that amount, and, after providing for her husband's monument, divided the balance of said $4,000 among them. Such gifts are given out of and measured by a particular fund, and are demonstrative legacies. Crawford v. McCarthy, 159 N. Y. 514, 54 N. E. 277. The legacies being demonstrative, it is well settled that the fund upon which they are charged must first be applied to their extinguishment, and the balance of the legacies be classed with the general legacies and abate pro rata with them. Florence v. Sands, 4 Redf. Sur. 210.

The contract for monument and markers at $340 is approved as a proper disbursement from the funds of the estate. There being no identified fund existing at the death of deceased applicable to the payment of the whole or part of the demonstrative legacies, those legacies will share pro rata with the general legacies on the distribution.

Two disputed claims have been presented, upon which evidence seems to have been taken by this court,—one by Susan Smith, the executrix, and one by William H. Smith, her son. The claim of Mrs. Smith was presented to this court by petitioner, dated May 5, 1900, more than five months after she filed her account, and after several hearings on judicial settlement. The claim is for services rendered by her to the deceased in caring for and nursing her from No-

vember 1, 1894, to April 12, 1898, at $10 per week, amounting to $1,810. It appears from the testimony that Mrs. Smith and her son William, in November, 1894, went to live with the deceased, and continued to live in common with her in her house until her death, April 12, 1898, and both of them performed such services for Mrs. Warner as would naturally be performed by her sister and nephew, when living in the house with her. The only testimony given in support of the claim is that given by the claimant, who is also executrix. There is no evidence whatever that the deceased promised to pay claimant for such services. There is very little evidence as to their nature and extent, and none whatever as to their value. The rule in regard to claims of this character is too well settled, to require the citing of authorities, that claims against the estate of a deceased person, made by near relatives, for personal services rendered in the last sickness, are to be regarded with suspicion, and require stronger proof to establish them than ordinary claims made by strangers. It appears that the deceased had more than $1,000 in bank at the time of her death, and that income from her money and property was frequently paid to her during the last four years of her life, while this claimant was performing these services. It would therefore seem that, if there was any agreement to pay claimant for her services, at least a partial payment would have been made from time to time during such four years. The evidence wholly fails to establish this claim, and the same is therefore disallowed.

All that has been said in regard to the claim of Susan Smith might be said in regard to the claim of the nephew, William Smith, if such claim were properly before this court for determination. The claim of Susan Smith, she being the executrix of the deceased, is properly submitted for determination on this accounting, pursuant to section 2731 of the Code; but the claim of William Smith can be heard and determined on this accounting only in accordance with section 1822 of the Code, by filing a written consent, executed by all the parties, which consent does not appear to have been executed and filed in this court. The reference to Mr. Mambert, the stenographer of this court, was simply to take the testimony of sick and infirm witnesses and report the same to this court, and was not and could not properly have been to hear and determine the claim. As the claim of William Smith was presented to and rejected by said executors more than two years since, and no action has been brought upon the same and no reference thereof had, the same is not considered upon this accounting.

It is conceded by all parties and it is the law of the case that the several legacies are not a charge upon the real estate by the deceased, which passes to the residuary legatee, Susan Smith. It appearing that the legatee Horace Bennett is a debtor to this estate upon two bonds and mortgages, aggregating, with interest, about $4,000, the amount payable to him on his legacies and his commissions should be credited upon such bonds, in full satisfaction of such legacies and commissions. In re Foster's Estate, 38 Misc. Rep. 347, 77 N. Y. Supp. 922, and cases there cited. All personal property and securities should be converted into money, unless one or more of the parties file consent to accept the same in place of the cash.

Let findings and decree be prepared accordingly.