In the Matter of the Estate of MARY J. COLLINS, Deceased.

Surrogate's Court, Orange County, October 9, 1935.

*Kopald & Haft,* for the accountant.

*James J. McCarthy,* for Martha Collins, as administratrix, etc., of Emmet Collins, objectant.

*Elwood C. Smith,* for All Saints Church, objectant.

TAYLOR, S. The decedent died testate, leaving a husband her surviving who died prior to this accounting. Prior to his death the husband filed a notice of election under section 18 of the Decedent Estate Law, and the determination of many of the questions involved depends upon the effect to be given to that notice of election.

The decedent and her husband owned a parcel of real estate as tenants by the entirety and, according to well-settled law, upon the death of the wife the husband became the sole owner. (*Matter of Sitkin,* 151 Misc. 448; *Zorntlein* v. *Bram,* 100 N. Y. 12; *Hiles* v. *Fisher,* 144 id. 306; *Matter of Klatzl,* 216 id. 83; *Matter of Lyon,* 233 id. 208.)

Despite the fact that this real property was in the two names, the wife, by the third paragraph of her will, apparently assuming she owned it, directed her executors and trustees to sell the realty with the consent of her husband as to time of sale and price and to divide the proceeds among the husband and three other named individuals.

After a number of bequests the will provides that the residue shall be held in trust and the income paid to decedent's husband during his lifetime with the direction to the trustees to pay over to the husband so much of the principal of the trust fund as they may deem necessary for the husband's proper care and maintenance. As to this residue there is a remainder over to a church.

The objections of All Saints Church, a legatee, raise the point that as the residue is in trust for the husband his right of election is limited to having paid to him $2,500 of the principal and the trust continued as to the remainder, and that, therefore, the husband actually takes under the will in that he must accept the trust for him, modified, however, to the extent of the principal sum being reduced by $2,500.

If this contention be correct, then the husband must submit the real property which was owned by his wife and him to sale for the purpose of payment of legacies as the will directs.

It is also well-settled law that if a person takes under a will with knowledge of the facts and circumstances, then he must do his part to carry out the whole testamentary scheme, conveying property of which he is the sole owner if the testator mistakenly believing the property to be his expressly devised that property to others, or, as in this case, directs its sale. (*Beetson* v. *Stoops*, 186 N. Y. 456; *Matter of McGrath*, 129 Misc. 514; *Matter of Smith*, 150 id. 367; *Bankers Trust Co.* v. *Greims*, 115 N. J. Eq. 102; *Fiske* v. *Fiske*, 173 Mass. 413; *Noyes* v. *Noyes*, 233 id. 55; *Barrier* v. *Kelly*, 82 Miss. 233; *West* v. *West*, 131 id. 880; *Utermehle* v. *Norment*, 197 U. S. 40; *McWhorter* v. *Green*, 111 Ark. 1.)

This objection, therefore, squarely raises the question of whether the husband under the circumstances, in spite of his notice of election under section 18 of the Decedent Estate Law, takes under the will or against it.

This statute (Dec. Est. Law, § 18) is remedial in its nature (Report of Commission to Investigate Defects in the Laws of Estates, Legislative Document 1930, No. 69, p. 276), and it follows that in construing it we must be liberal in our interpretation. We should have before us the admonition " that the letter killeth, but the spirit giveth life." (2 Corinthians, 3:6.) (*Dorsey* v. *Dorsey*, 224 Ala. 496; 140 So. 540; *Matter of Harris*, 150 Misc. 758; *Matter of Angarica*, 157 id. 98; *Town of Ulysses* v. *Ingersoll*, 182 N. Y. 369; *Lockhart* v. *Hoffman*, 197 id. 331; *Archer* v. *Equitable Life Assurance Society*, 218 id. 18; *Matter of Byrnes*, 260 id. 465; *Matter of Greenberg*, 261 id. 474; *Walters* v. *Waggener*, 104 Ore. 682; 208 P. 753; *Chambliss* v. *Bolton*, 146 Ga. 734; 92 S. E. 204.)

The purpose of this statute is to prevent disinheritance (Legislative Document, *supra*, p. 87); " the new law provides against unjust provisions, cutting off the widow from her share of the estate." (*Matter of Greenberg*, 261 N. Y. 474, 478.) One may readily conceive an artfully drafted will in which the decedent disposes of property of the surviving spouse of such value that it would be practically financial suicide for the survivor to either accept the will provisions for his benefit, or even to elect to declare against the will if it contained a trust for his benefit. In such cases the only alternative of the surviving spouse would be to reject the benefits under the will *in toto* and be thereby disinherited, a situation which the statute was very plainly enacted to prevent. To give a supposititious case — a husband died leaving a net estate of $10,000, leaving him surviving his wife and collateral

relatives. The husband by his will attempts to dispose of property of the wife valued at, say, $25,000. If the wife accepts the benefits under the will, then she must convey her property of $25,000 value as the husband's will directs; if she elects to take advantage of section 18 of the Decedent Estate Law, then she may have $2,500 cash from the husband's estate and the trust for her benefit continues. Applying the objector's contention to this situation it would mean that even if the wife filed a notice of election she would nevertheless take under the will and bring herself within the equitable rule hereinbefore mentioned. As a practical matter she would not file a notice of election, but be required to renounce *in toto* all provisions of the husband's will for her benefit and thus be completely disinherited. The framers of this statute intended no such result.

Neither the industrious research of counsel, nor the efforts of the surrogate, have brought to light any controlling authority, either in this State or elsewhere. There is a case, however, which, although differing considerably in its facts, points the way. In *Matter of Curley* (151 Misc. 664; affd., 245 App. Div. 255) the husband's will directed that his executors should set apart from his estate an amount which, added to the value of certain premises, should constitute one-half the net value of the estate. The real property mentioned was owned by husband and wife as tenants by the entirety and it was held that the testator might not require the surviving spouse in computing the one-half of the estate to which she was entitled upon filing a notice of election under section 18 of the Decedent Estate Law, to take into consideration the real property which was hers upon the husband's death solely by virtue of the form of conveyance. While the facts are not identical, nevertheless it is difficult to see any difference in principle between this and the *Curley* case.

I think the proper construction to be placed upon this statute in the instant situation is that a person acting under it elects to take against the will, for the statute provides that the survivor may elect " to take his or her share of the estate *as in intestacy,* subject to the limitations, conditions and exceptions contained in this section." This statute when put in operation is more in the nature of a modified statute of descent and distribution, and is to be read in conjunction with section 83 of the same act. Put otherwise, the will provision for the setting up of a trust for the surviving spouse so far as such trust is continued after the deduction of $2,500 from the principal thereof is to be read into and become part of the statute rather than the converse. (*Matter of Sitkin,* 151 Misc. 448, 455.)

This objection, therefore, is dismissed upon the ground that the surviving spouse has elected to take " as in intestacy," not under the will, and is not, therefore, bound by the equitable rule hereinbefore stated.

The objectant puts forth the suggestion, although not vigorously, that by reason of the husband having accepted the personal property and household effects bequeathed to him under the eighth clause of the will, he is subject to the equitable doctrine, and must, therefore, submit the real property to sale for the payment of legacies. It does not appear that this personal property is other than that which is set off to the surviving spouse and is really no part of the estate in any event. (Surr. Ct. Act, § 200.)

Objection is made by the husband's estate that the $1,000 directed by the fourth clause of the will to be set up as a trust fund for cemetery upkeep is excessive and should be cut down. Assuming, without deciding, however, that a decedent may not provide unreasonably large amounts for funeral expenses, cemetery upkeep, etc., in order to mitigate against the distributive share which the surviving spouse might take by virtue of the right of election, it cannot be said, as matter of law (no proof having been offered upon the subject), that this sum is so obviously too large for the purpose. or is bequeathed with an ulterior intent in mind.

A reasonable sum for cemetery upkeep is construed as a part of funeral expenses and even were no provision made therefor in the will the estate representative would have a right to make provision therefor. (Surr. Ct. Act, § 216; *Matter of Rohr*, 145 Misc. 382; *Matter of Delafield*, 142 id. 536.) Here, we have a definite gift, and as stated, it not appearing that there was any ulterior purpose in fixing the amount at a figure larger than customary in this vicinity, we are not at liberty to remake the will and the bequest must stand. (*Matter of Morris*, 227 N. Y. 141; *Matter of Stephen.* 150 Misc. 27.)

In this connection it was said in *Matter of Arrowsmith* (162 App. Div. 623; affd., 213 N. Y. 704): " It is argued, therefore, that we should undertake to determine how much the testatrix would probably have left the home if she had known the extent of her property, and should cut down her legacy to that sum, a process which would come perilously near making a will for her. This contention is sought to be supported by a line of cases in which testators have directed their executors to expend what has been deemed disproportionate amounts of small estates for the erection of monuments to the deceased or the saying of masses. (*Matter of Smith*, 75 App. Div. 339; *Matter of Backes*, 9 Misc. Rep. 504; *Matter of Boardman*, 46 N. Y. St. Repr. 444; *Emans* v. *Hickman*, 12 Hun,

425.) The distinction between those cases and that at bar is obvious. In those cases there was no gift, but merely a direction to expend a given sum for a specified purpose. Here no such instruction is given to the executor, but there is a direct gift to a specified beneficiary " (pp. 625, 626).

Among the assets in the estate was a mortgage by one Yagel to decedent which was bequeathed to the Church of the Holy Innocents of Highland Falls. Apparently the husband thought that by his electing under section 18 of Decedent Estate Law, one-half of this mortgage thereby became his. In this he was mistaken because by such notice of election he became entitled not to an undivided interest in all of the decedent's property in kind, but to " one-half of the net estate." Upon this erroneous assumption the husband executed what purports to be an assignment of his one-half interest in the Yagel mortgage to the Church of the Holy Innocents and authorized his wife's executors to transfer the said mortgage to the church to be received by it as a memorial to his late wife. This assignment was not acknowledged as required by section 32 of the Personal Property Law, and it is, therefore, claimed to be ineffective. The purpose of the assignment is plain and will be construed to be in the nature of a release or assignment of the husband's interest in the estate so that this bequest might be fully effectuated. The decree in the summary statement may so consider this item.

The legacy of this mortgage is, of course, specific and there will be no abatement, if at all necessary, until the general and demonstrative legacies are first exhausted.

While perhaps the fourth clause of the will is inartificially drawn in that it bequeaths the remainder of decedent's money in a certain bank to All Saints Church " after first setting up $1,000 as a trust fund, to use the income for the care of my plot," it is clear that it was the intention of the testatrix this fund should be paid from this particular account. This is a demonstrative legacy.

Other questions are presented with respect to the label to be placed upon other bequests.

By the third paragraph of the will the executors are directed to sell the real property which was owned by the husband and wife as tenants by the entirety and to pay from the proceeds certain sums to Gertrude, Mamie and Lillian Berdunn, and by the eleventh clause the testatrix provided if sufficient moneys were not realized from the sale of the real property and from her account in the Highland Falls Bank, then these bequests should be paid from the Seaman's Bank for Savings account. To provide these legacies the testatrix designated three successive sources.

Where a gift of money is accompanied by a reference to a fund or to particular assets as a means or source of payment, the bequest is usually a demonstrative legacy. Two elements are necessary to constitute a demonstrative legacy: There must be, *first*, a bequest in the nature of a general legacy, and *second*, it must point to a fund out of which the payment is to be made, partaking of the character of a specific legacy. (2 Page Wills, § 1230; Remsen Preparation of Wills and Trusts, p. 148; 2 Davids New York Law of Wills, § 1070; *Crawford* v. *McCarthy*, 159 N. Y. 514, 519; *Matter of Smallman*, 138 Misc. 889; *Matter of Slater*, 143 id. 829.) The Berdunn legacies are also demonstrative legacies.

The bequests in the fifth and sixth clauses of the will being of sums of money without any designation of the source from which to be paid, except possibly the general provisions of the eleventh clause that if insufficient moneys be not obtained from the sale of the real property and from the moneys in the Highland Falls Bank, then the legacies are to be paid from the Seaman's Bank for Savings account, are general legacies.

In determining the intent of the testatrix, which after all is the cardinal principle to be followed, I think it was intended these two small legacies should be general and that the eleventh clause of the will was merely an indication of the order of payment from the different funds, if necessary, or, in other words, a direction as to the marshaling of assets.

In arriving at the net estate the debts and funeral expenses will first be deducted; the one-half of the net estate to which the husband is entitled under the statute will be reduced by an amount sufficient to permit the transfer of the Yagel mortgage to the church and without encroaching upon the amount which would, without consideration of this amount, be the property of All Saints Church as a specific legacy under the fourth clause of the will; the general legacies will first abate, as well as the deficiency in the demonstrative legacies over and above the particular funds from which payable, and lastly, the demonstrative legacies, so far as their funds applicable thereto, will abate ratably as among themselves, if necessary. (*Florence* v. *Sands*, 4 Redf. 206; *Matter of Warner*, 39 Misc. 432; *Matter of Strasenburgh*, 136 id. 91; *Matter of Smallman*, 138 id. 889; *Matter of Wishart*, 149 id. 343.)

Settle decree on five days' notice or by consent.