In the Matter of the Estate of MARGARET C. BORDEN, Deceased.

Surrogate's Court, Westchester County, June 4, 1936.

*Sackett, Chapman, Brown & Cross* [*Joseph A. Nickerson* of counsel], for Gail Borden, executor.

*Millard & Fitzgerald* [*Gerald Fitzgerald* of counsel], for George W. Gerlach, executor.

*Shearman & Sterling* [*James A. Stevenson* of counsel], for Mary L. Mason, executrix.

*James A. Stevenson,* for Louise A. Stevenson and Martin M. Mason.

*George H. Corey,* for the Haarlem Philharmonic Society.

SLATER, S.  Gail Borden, one of three executors of decedent's will, has petitioned the court for instructions, for the construction of certain paragraphs of the will, and for the extension of time within which the petitioner, as the surviving husband, may serve and file his notice of election to take his personal and statutory share of the estate against the will.

The instructions sought relate to the burial, the erection of a mausoleum, and perpetual care of the plot.

The first paragraph of the will *directs the payment of funeral expenses.*  The second paragraph of the will, however, gives directions as to the burial plot, monument and perpetual care as follows:

" *Second.* I hereby *authorize and empower* my Executors hereinafter named, or such of them as may qualify, and their successor or successors, to expend the sum of Fifteen Thousand ($15,000) Dollars, in the erection of a mausoleum in Woodlawn Cemetery in the City of New York, the same to be erected on the Borden plot if there is sufficient and suitable room therefor, *and if not,* then on a plot *to be purchased by my said Executors* for which I *authorize* them to pay a suitable and reasonable amount.  In this mausoleum besides my body, is also to be placed the body of my mother and my husband, Gail Borden, if he so desires.  If said mausoleum is not erected on the Borden plot, then I *authorize and empower* my Executors hereinafter named, to use such amount as may be necessary to provide for the perpetual repair and preservation of the said mausoleum and the planting and cultivating of trees, shrubs, flowers and plants in and around said plot."

Two of the executors question their power and authority to proceed according to the words of the second paragraph.

Subdivision 3 of section 314 of the Surrogate's Court Act says that "the expression 'funeral expenses' includes suitable church or other services, a burial lot and *suitable monumental work erected thereon,* and a reasonable charge or expenditure for the *perpetual care of decedent's burial lot.*" (Italics mine.)

The erection of a mausoleum is within the authority granted by subdivision 3 of section 314 of the Surrogate's Court Act where no direction is made in the will. This section calls for "suitable monumental work erected thereon" which means a reasonable charge or expenditure in the absence of testamentary direction. In the instant case, however, we have testamentary direction by words which *direct the payment of funeral expenses.* These are the things the testatrix *directs* to be done. They include the things mentioned in subdivision 3 of section 314 of the Surrogate's Court Act. The estate is upward of $400,000 and it cannot be said that the amount of $15,000 to be expended for the erection of a mausoleum and the probable amount of $10,000 for the plot is disproportionate to the size of the estate. (*Matter of Billman,* 143 Misc. 765; *Matter of Myers,* 140 id. 442.) For present purposes, we are not interested in who gets the estate.

Here the word "authorize" is used as a word of direction and command. It is an imperative power. The executors were "authorized" to *pay* for the erection of a suitable mausoleum. Without giving the word such a meaning, the monument contractor, when he demanded his pay, might be met with the argument, as used here, that the executors were not directed, but only "authorized" with discretion and so could not pay. There is no merit to the argument in either case.

In my judgment, the executors should proceed to carry out the wishes of the decedent with regard to the purchase of a burial plot, the erection of a mausoleum thereon, and provisions for its perpetual care.

The last paragraph of the will states that, while the husband is living, two of the three executors and trustees shall be necessary to decide all questions as to the "*conduct and administration of my estate.*" I hold that this does not give discretionary power and lessen the testatrix's meaning of the words of authority which she has already used regarding the erection of a mausoleum. The court is not at liberty to remake the will and the words of direction must stand. (See *Matter of Collins,* 156 Misc. 783, 787.)

The most important question before me relates to the construction of the twenty-second paragraph of the will.

Margaret C. Borden, the decedent, died on October 26, 1935, and her will was probated on December 19, 1935. She left a

husband, a sister and a brother. She was childless. The marriage was the husband's second venture and the wife's third. The will was executed on the 19th of February, 1934. The will (1) directs payment of debts and funeral expenses; (2) authorizes and empowers the executors to expend the sum of $15,000 in the erection of a mausoleum and provides for the perpetual care of the said mausoleum and the cultivating of the trees and shrubs in the plot; (3) gives to the trustees 2,500 shares of stock of the Borden Company, the income to be paid to the husband during his lifetime; (4) devises to the husband a one-half undivided interest in the real estate where the decedent had resided; (5) gives 2,500 shares of stock of the Borden Company outright to her sister; (6) gives the other one-half undivided interest in the designated real estate to the sister; (7) gives personal belongings and jewelry by the seventh to the twelfth clauses, inclusive; (8) gives money legacies in the thirteenth to the seventeenth, inclusive; (9) by the eighteenth paragraph gives 1,500 shares of stock of the Borden Company to the brother-in-law, which may, or may not, fall into the residuary estate; (10) sets up a trust for friends in the amount of $30,000. by the nineteenth paragraph, with the remainder passing into the residuary estate; (11) by the twenty-second paragraph of the will, of which the petitioner seeks construction, provides as follows:

" *Twenty-second.* All the rest, residue and remainder of my estate, *subject to the later provision of this paragraph,* I give, devise and bequeath to my husband, Gail Borden, if he shall survive me, and my sister, Mary L. Mason, share and share alike, but if I have not devised or bequeathed to my husband, if he shall survive me, the share of my estate to which he is entitled by law, then out of the said residuary estate I give and bequeath to him a portion thereof sufficient to bring his bequests up to the amount he would be entitled to receive by law, but if I have made sufficient provision for him, then my said residuary estate is to be divided, share and share alike, between my said husband and said sister, but if my said husband shall not survive me, then I give, devise and bequeath my entire residuary estate to my sister, Mary L. Mason, but if my said sister shall not survive me, then I give, devise and bequeath to her husband, Martin M. Mason, the share of my estate to which she would have been entitled to had she survived me."

It is not essential here to refer to the remaining paragraphs of the will.

The husband contends that it was the intention of the testatrix, in all events, to give him the full share which section 18 of the Decedent Estate Law permits him to receive, plus one-half of the

residuary estate. The sister and the other legatees contend that any gift, other than those in the third and fourth paragraphs of the will, is payable out of the residuary estate.

While the will was drawn by an attorney, it is not worthy of being referred to as a work of art. The will must be read as a whole in order to discern the intention of the testatrix. Here the search for intention is not a search after phantom. The testatrix has evinced her wish in clear language and her purpose will not be obstructed by the use of awkward or misplaced words or sentences. While certain rules have been announced for guidance on the interpretation to be placed on wills which are of doubtful meaning or ambiguous, such wills must yield to the intention of the testator if such can be reasonably ascertained. (*Matter of Neil*, 238 N. Y. 138, 140; *Matter of Buttner*, 243 id. 1; *Matter of Rooker*, 248 id. 361; *Matter of Chalmers*, 264 id. 239, 246.)

A casual reading of the twenty-second paragraph might indicate a bequest of property, the value of which is the difference between the worth of one-half of the real property and the gift in trust of 2,500 shares of the Borden stock, and the amount to which the husband would be entitled to receive by law (meaning the right of election under section 18 of the Decedent Estate Law) as part of the residuary estate. So, if the residuary estate lacked funds, the gift would fail under lure the of law that residuary legatees are entitled to nothing until all the debts and other legacies are paid. (*Buffalo Trust Co.* v. *Leonard*, 154 N. Y. 141, 146; *Matter of Title G. & T. Co.*, 195 id. 339.) I do not so read the will. The residuary clause is not in the usual general form. The paragraph containing the residuary gift is dual in its make up. It contains two gifts — one the legacy to the husband and the other the gift of the residuary to him and the sister. There is no shadowland of uncertainty of decedent's purpose. While the draftsman misplaced in the will the clause of gift of the legacy to the husband, he created no ambiguity of intendment regarding Mrs. Borden's purpose to give her husband his full share as provided " by law." The testatrix was not magnanimous — the law would have given it to him if she had not. The gift found in the residuary paragraph is so related to the prior gifts to the husband that it must be read in connection with such prior gifts. We can infer from the language of the twenty-second paragraph a clear intention to complete the prior gift by adding thereto the excess between the prior legacies and what section 18 of the Decedent Estate Law provides the husband may take by election. The basic idea of section 18 is equality. That is what the testatrix had in mind. That was her intent and purpose. She knew the law would compel

it. A little figuring by the draftsman would have indicated clearly that the two gifts in the prior part of the will utterly failed to reach in value the half to which the husband was entitled by law. In any event, the draftsman, as well as the testatrix, was fearful that she had not given all that the law permitted the husband to take, so she said: " *But,* if I have not devised or bequeathed to my husband, if he shall survive me, the share of my estate to which he is entitled by law, then out of the said residuary estate I give and bequeath to him a portion thereof sufficient to bring his bequests up to the amount he would be entitled to receive by law." Here is a clear intention to give what the law provides. To reach a different conclusion would require a violent disregard of a plain purpose. The predominate purpose is to give the husband by will his intestate share. We will not be indulging in speculation as to her intent, but are being controlled by apt words.

I hold that the gift of the difference in property between what had been theretofore given in the third and fourth paragraphs and what the law permits the husband to receive by election (an amount to be hereafter determined by the court), never fell into or formed a part of the residuary estate. It stands alone. We have specific direction and the language employed by the testatrix indicates her intention not to make this bequest a part of the residuary estate. The draftsman had the testatrix give the rest, residue and remainder of the estate to the husband and to the sister, excluding the gift herein discussed, by the following words: " *But* if I have not devised or bequeathed to my husband, * * * the share of my estate to which he is entitled by law," etc. The word " but " is the word which excludes the gift from the residuary estate. It is defined as " except," " on the contrary." It is here used as a word of limitation and exception. Its meaning is as though it were written: " I give the residue to A and B, excepting therefrom, however, a gift of a certain amount of money to C." The use of the word " but " indicates an intention of those who use it to limit or restrain the sense or effect of something which had before been said and is used only with the view of limiting or restraining the preceding language. The word " but " is a word of qualification or proviso. In *Leggett* v. *Firth* (132 N. Y. 7, 11) the court said that the significant words are " but " and " if any." " ' But,' as thus used, is a word of limitation, and shows that the testator intended that the previous gift, which was apparently absolute, should not remain absolute, but should be limited by that which followed. It indicates a proviso, condition or qualification, and in connection with the rest of the sentence reduces the previous gift by carving out, not an absolute, but a possible, remainder for the children."

The word " but " may fairly be interpreted as equivalent to the word " except." Equivalent they often are. Such a reading has support in the evidences of intention furnished by the will itself. (*Matter of Gallien*, 247 N. Y. 195, 199.)

The word " but " has been held to be synonymous with " except " in other jurisdictions. (*Winter* v. *Dibble*, 251 Ill. 200; 95 N. E. 1093, 1099; *First Nat. Bank* v. *Foster*, 9 Wyo. 157; 61 P. 466, 467; *Stonestreet* v. *Harrison*, 15 Ky. 161, 164; *C. & O. Ry. Co.* v. *Miller*, 19 W. Va. 408, 436; *Rollins & Sons* v. *Board of Comrs.*, 199 Fed. 71; *Matter of Sullivan County R. R.*, 76 N. H. 185; 81 A. 473; *Board of Trustees of Park College* v. *Attorney-General*, 228 Mo. 514; 129 S. W. 27.)

The gift of the residuary estate is also expressly made " subject to the later provision of this paragraph." Among the later provisions of the paragraph is the gift of the difference between what had already been given and what the husband is entitled to receive by law. Again we learn of the testatrix's intent not to make the gift of this legacy a part of the residuary estate so as to be limited by what was found in the fund.

The general legacy to the husband found in the twenty-second paragraph is separate and distinct from the gift of the residuary estate. In the interpretation of the residuary clause, I hold that the legacy is wholly the husband's in one case, and in the other the residue, if any, is shared by the husband and the sister.

In the attainment of its end, the court may reject words and limitations, supply them, or transpose them to get at the correct meaning. (*Matter of Gallien*, 247 N. Y. 195, 200, and cases cited; 1 Jessup-Redfield on Wills [3d ed.], § 477, p. 897.) Having found the gift to the husband not to be a part of the residuary estate, we meet with the words in the sentence of bequest that it shall be paid " out of the said residuary estate," a fund chosen to bear it. The residuary estate in the instant case may fall short of sufficient funds to make up the one-half share of the estate which the decedent intended to give her husband. The dearth of funds in the residuary estate need not stand in the way. It was the intent of the decedent to give to her husband the full one-half which the law permits him to receive by election. These words, " out of the residuary estate," cannot be permitted to cut down or impair the integrity of the gift. The words " then out of the said residuary estate " become inconsistent and repugnant to the words of gift of an amount to make up the full share as provided " by law." I hold that the words " then out of the said residuary estate," used in the twenty-second paragraph, may be wholly disregarded as nugatory. (*Tillman* v. *Ogren*,

227 N. Y. 495; *Matter of Wiley*, 111 App. Div. 590, dis. op. p. 597, which was concurred in in 188 N. Y. 579; 2 David Law of Wills, § 810; 2 Jessup-Redfield on Wills [3d ed.], § 933-a, p. 1937.) Artificial rules of construction inconsistent with intention cannot prevail. (*Matter of Crouse*, 244 N. Y. 400, 404.)

Even if these words should be allowed to stand, they might be overcome on the theory of law that the legacy is a demonstrative one, payable out of a fund, the residuary estate, the lack of which makes it a charge on the general estate. The demonstration of a source is directory only to the executors. The quantum is a charge upon the general estate. (*Matter of Collins*, 156 Misc. 783, 789, and cases cited.) An insufficient residue would thwart the declared intent to give the husband the half which section 18 of the Decedent Estate Law states he must have. The testatrix matched the positive terms of the statute by her own declared gift, with the added gift to share equally in the residue.

The husband would take as a matter of right — but the wife made her own declarations, her idea of fairness, in place of his basic right, " upon the dissolution of the family partnership," as the learned Surrogate WINGATE would say.

The new law, effective September 1, 1930, to protect surviving spouses overtook the testatrix. She knew its terms and the impossibility of circumventing it. With this in mind, by the use of clear language (even if improperly placed) the decedent gave the husband what the laws of the State of New York would give him, the right to take his one-half prior to any other gift in the will, after the payment of debts and administration expenses. The decedent and her husband were persons in the neighborhood of sixty years of age, having been married for a considerable number of years. In a note following the twenty-third paragraph of the will the deceden. expressed an " earnest desire " for his care and comfort. He was not otherwise provided for by the testatrix. If the residuary estate is *nil*, then she did no more for him than the State compels her to do.

The law creates for the husband of the testatrix a preference in the payment of his legacy. This principle of law is laid down in *Matter of Neil* (238 N. Y. 138); *Matter of Gabler* (267 id. 559); *Matter of Smallman* (138 Misc. 889, 909, and cases cited); *Matter of Day* (150 id. 691).

The will must be sternly construed in view of the fact that it was the intent of the testatrix to carve her gift to be consistent with the terms of section 18 of the Decedent Estate Law.

I hold that the gift in the twenty-second paragraph of the will is a general legacy in amount to be determined by the court, being

the difference between what had theretofore been given and the amount which the husband is permitted to receive under his right to an election. This will not include the sum of $10,000 which only passes to a surviving spouse upon the intestacy of a decedent. The difference between what the decedent had given in the early part of the will and what she gave in the twenty-second paragraph is to be drawn from the general estate. After its preference or lien is satisfied, the other gifts in the will will be carried into effect, if possible, out of what estate remains.

Those named as beneficiaries, other than the husband, are fearful that on the court's construction their gifts may have to abate. They should be advised that, if the husband should elect to take against the will, exactly the same abatement would occur. The law means just what it says — one-half to a surviving spouse where there are no children, ahead of the bounty legatees. The will gives it, as does the law. There is at least equality here by compulsion.

If abatements are necessary, upon the falling in of a trust, the corpus of the trust shall be first used to supply any deficiency caused by the abatement of such gifts. When the gifts are made complete, the balance falls into the residuary estate, to be shared by the husband and the sister. (*Matter of Title G. & T. Co.*, 195 N. Y. 339.) The result is that the husband as a beneficiary of the Borden stock held in trust for him is vested with one-half of the remainder interest as one of the residuary legatees. It will never come into his actual possession. It will pass to his estate. (*United States Trust Co.* v. *Taylor*, 193 App. Div. 153; affd., 232 N. Y. 609.)

Another question of construction relates to the dividends mentioned in the twenty-fourth paragraph and the paragraph marked "Lastly." The twenty-fourth paragraph provides that the legacies shall be paid free from any inheritance tax and says: "All dividends on shares of stock bequeathed by me, declared after my death, to belong to and to be paid to the said legatees thereof, respectively, and also to the said trusts." (Pers. Prop. Law, § 17-b.) This clause standing alone appears to be plain enough and to show that the decedent intended to have all dividends declared after her death go to the persons who would be takers of her gifts. But attention is called to the paragraph marked "Lastly" which, in the first instance, appoints executors and trustees and provides that two-thirds in number of such shall decide all questions "as to the conduct and administration of my estate." Then follows a clause which says: "I *request* that the trust for my said husband be set up as soon as possible after my death, and that he be entitled to and receive *all dividends on the Borden Company stock* declared after my death, and that all trusts be set up as soon after my

death as may reasonably be accomplished." (Italics mine.) The best that can be said regarding this clause is that it is entirely precatory and without force in law. The contention made by the husband that he is entitled to receive dividends upon *all the stock of the Borden Company* which the decedent owned is without merit. The clause is only a reiteration of what has already been stated in the twenty-fourth paragraph regarding the dividends to those who take legacies and are interested in the trusts.

The court received certain evidence offered by the husband to which objection was made by other counsel appearing and decision on its reception was withheld. The evidence relates to surrounding circumstances with relation to the property. It will not be received as evidence affecting the construction of paragraph twenty-second. It will be received only in so far as it may show the family relationship.

The husband's right to serve and file his notice of election under section 18 of the Decedent Estate Law is extended for three months from June 19, 1936, *i. e.,* September 19, 1936.

Proceed accordingly.